# IN THE UNITED STATES DISTRICT COURT DISTRICT OF UTAH

## NORTHERN DIVISION

| | |
|---|---|
| **GEOMETWATCH CORPORATION**, a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**ALAN HALL**, an individual; **ISLAND PARK INVESTMENTS**, a Utah corporation; **TEMPUS GLOBAL DATA, INC.**, a Delaware corporation; **ROBERT T. BEHUNIN**, an individual; **UTAH STATE UNIVERSITY ADVANCED WEATHER SYSTEMS FOUNDATION**, a Utah corporation; and **UTAH STATE UNIVERSITY RESEARCH FOUNDATION** d/b/a Space Dynamics Laboratory, a Utah corporation,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:14-cv-60-JNP-PMW<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Paul M. Warner |

District Judge Jill N. Parrish referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] At a hearing on April 29, 2016, the court instructed the parties to contact the court by telephone to resolve any minor discovery disputes that may arise in the course of this litigation.[2] On June 8, 2016, the parties contacted the court for guidance on resolving two discovery disputes. After hearing arguments from counsel, the court determined that briefing on the two issues would help resolve the disputes. The parties (and non-parties)

---

[1] *See* docket nos. 81 and 85.
[2] *See* docket no. 194.

have now submitted that briefing.[3] The court has carefully reviewed the briefing submitted by the parties, as well as the applicable case law, and now rules as follows.

### **Discovery of Defendants' Joint Defense and Indemnification Agreements**

GeoMetWatch seeks the production of any joint-defense or indemnification agreements between or among Defendants on the grounds that they are relevant and proportional and not privileged. Alan Hall, Tempus Global Data, and Island Park (collectively, "Hall Defendants") argue that these documents are not discoverable because they are privileged and are not relevant to the claims and defenses in the action.

The joint-defense or common-interest privilege is an extension of the attorney-client and/or the work-product privileges; it does not stand alone as an independent privilege. *See Static Control Components, Inc. v. Lexmark Intern., Inc.*, 250 F.R.D. 575, 578 (D. Colo 2007). "Thus, to be eligible for protection under the joint defense privilege, it must be established that the materials fall within the ambit of either the attorney-client privilege or the qualified immunity afforded to work product." *Id.* (quotations and citation omitted). To establish a joint-defense privilege, the proponent of the privilege must first establish either the attorney-client or work-product privileges, and then must also demonstrate: "(1) the documents were made in the course of a joint-defense effort; and (2) the documents were designed to further that effort." *In re Grand Jury Proceedings*, 156 F.3d 1038, 1043 (10th Cir. 1998).

The Tenth Circuit has not had occasion to specifically address the discoverability of joint defense agreements themselves or whether they are protected by the joint defense privilege. Cases that have addressed whether joint-defense agreements are discoverable or protected by the joint-defense privilege run the gamut. *See Steuben Foods, Inc. v. GEA Process Eng'g, Inc.*, No.

---

[3] *See* docket nos. 260, 261, 262, and 263.

12-CV00904(S)(M), 2016 WL 1238785, *1 (W.D.N.Y. Mar. 30, 2016) ("Cases addressing the question of whether JDAs are privileged fall, quite frankly, all over the lot."). Some courts have found that joint-defense agreements are indeed protected by the joint-defense privilege. *See, e.g.*, *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 950282, at *10 (D.Kan. Mar. 26, 2007) (assuming that the joint-defense privilege applied to the joint-defense agreement because the parties did not argue otherwise and "the applicability of the privilege is clear to the Court"). Other courts have found that joint-defense agreements are not protected by that privilege. *See, e.g.*, *Rodriguez v. Gen. Dynamics Armament and Technical Prod., Inc.*, Civ. No. 08-00189, 2010 WL 1438918, *1 (D. Haw. Apr. 7, 2010) (finding, after an *in camera* review, that the joint-defense agreement did not contain any privileged or protected material and ordering that it be produced). And still other courts have determined that joint-defense agreements are simply not relevant and thus not discoverable. *See, e.g.*, *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 218 (W.D. Ky. 2006) (noting that while the parties "argued vigorously" on the issue of privilege of the joint-defense agreements at issue, they failed to demonstrate that the agreements were "'relevant to the claim or defense of any party'" (quoting Fed. R. Civ. P. 26(b)(1))).

The threshold issue here is whether the joint-defense agreements are relevant to the parties' respective claims or defenses. *See Warren Distrib. Co. v. InBev USA L.L.C.*, No. Civil No. 07-1053 (RBK), 2008 WL 4371763, *4 (D.N.J. Sept. 18, 2008). Rule 26(b)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . the importance of the discovery in

resolving the issues." Fed. R. Civ. P. 26(b)(1). "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401.

This court concludes that the joint defense agreements are not relevant to the parties' respective claims and/or defenses. This court has reviewed the case law in depth and finds the decision in *Warren* to be particularly helpful. The court in *Warren* denied the plaintiff's motion to compel the joint defense agreement on the grounds that it was not discoverable; the court never reached the issue of privilege. *See Warren*, 2008 WL 4371763, at *2. The court noted that the relevancy of a joint defense agreement depends upon its language and thus reviewed the agreement *in camera*. *See id.* at *3. Like the agreement in *Warren*, the joint defense agreement in this case "contains language that parties typically include in joint defense agreements to protect from discovery privileged information revealed to a third party." *Id.* It "contains standard and boilerplate language that is not discoverable because it is not relevant to any claim or defense in this case." *Ford Motor Co. v. Edgewood Properties, Inc.* 257 F.R.D. 418, 428 (D.N.J. 2009).

The plaintiff in *Warren* argued that its civil conspiracy claim rendered the defendants' joint defense agreement relevant and thus discoverable. The court disagreed. Similarly, GeoMetWatch asserts that the joint-defense agreement is directly relevant to its claim for civil conspiracy, but it too has failed to demonstrate the agreement's relevancy under Rule 26(b)(1). As noted by the court in *Warren*, "[t]he fact that a joint defense agreement was signed is not evidence of the conspiracy plaintiffs allege existed. If this were the case courts would routinely order the production of joint defense agreements." *Id.* at *4.

Because the court has determined that the joint-defense agreement is not relevant, it need not determine whether it is protected by the joint-defense privilege.

For the same reason as set forth above, the court likewise concludes that the indemnification agreements between the Hall Defendants and the four individual defendants are not relevant to any claim or defense of any party. *See, e.g., In Re Zicam Cold Remedy Marketing, Sales Practices, and Products Liability Action*, No. 09-md-2096, 2010 WL 4715951, *1 (D. Ariz. Nov. 15, 2010). While Rule 26.1 sets forth a specific exception providing for the discoverability of insurance agreements, there is no similar provision for non-insurance indemnification agreements. *See* Fed. R. Civ. P. 26.1(e)(1); *see also In re Zicam*, 2010 WL 4715951, at *1 (holding that "[b]ecause no insurance business is party to the agreement, [Rule 26] does not require its automatic disclosure"). As the advisory committee notes to Rule 26(b)(2) explain, the Rule is not intended to cover "the ordinary business concern that enters into a contract of indemnification." Fed. R. Civ. P. 26(b)(2) advisory committee notes. GeoMetWatch contends that the indemnification agreements are relevant to issues of witness credibility, especially if they contain tolling or settlement provisions. *See In re Lloyd's American Trust Fund Litigation*, No. 96 CIV. 1262, 1998 WL 50211, *21 (S.D.N.Y. Feb. 6, 1998) (noting that the party requesting production of an indemnification agreement argued that the agreement was relevant to show potential bias). The court has reviewed the indemnification agreements in this case and they do not contain any provisions that settle or toll claims. They merely provide that the Hall Defendants are responsible to indemnify these individual defendants.

The court in *In re Lloyd's American Trust Fund Litigation* determined that because the indemnification relationship between the indemnitor and indemnitee was already known, the

agreement itself was not discoverable as "the details of any indemnification agreements that may exist add nothing to that argument [that it should be produced]." *See id.* at *20. Similarly, GeoMetWatch is aware of the indemnification relationships between the Hall Defendants and the four individual defendants. Because the indemnity agreements are not relevant to the subject matter of the case and add nothing to GeoMetWatch's arguments regarding potential bias, the agreements need not be produced.

**Discovery of GeoMetWatch Investor Communications**

The Hall Defendants seek the production of post-lawsuit documents and communications between and among GeoMetWatch and GeoMetWatch Investors ("GMW Investors"), who are non-parties to this lawsuit. Defendant Utah State University Advanced Weather Systems Foundation ("AWSF") argues that GMW Investors are improperly withholding these communications. Specifically, AWSF asserts that GMW Investors have failed to establish the existence of the attorney-client, work-product, and/or common-interest privileges.

GMW Investors assert that they have produced responsive, non-privileged documents, as well as a privilege log for privileged documents, that were in existence prior to the date this lawsuit was filed. GMW Investors assert that they have not produced those documents that were created after the lawsuit began on the grounds that they relate almost entirely to legal advice and strategy concerning this lawsuit and that GMW Investors and GeoMetWatch share common interests with respect to this case. However, GeoMetWatch Investors have indicated that they do not object to providing information that relates only to a defense that GeoMetWatch's injury was the result of bad management rather than defendants' misconduct.

As noted above, the common-interest privilege is an extension of the attorney-client

5

and/or the work-product privileges; it does not stand alone as an independent privilege. *See Static Control Components, Inc.*, 250 F.R.D. at 578. Thus, the court must first determine that attorney-client privilege or work-product privilege applies before considering the common-interest privilege. *See Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 705 (10th Cir. 1998). GMW Investors bear the burden of demonstrating that the attorney-client or work-product privileges apply. *See Trans-W. Petroleum, Inc. v. Wolverine Gas & Oil Corp.*, No. 2:06-CV-801-TS-PMW, 2011 WL 6318528, at *3 (D. Utah Dec. 15, 2011). To demonstrate that the attorney-client privilege applies to the requested documents, GMW Investors must establish that the documents contain "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010). To establish that the documents are work-product, GMW Investors must prove that they consist of "material assembled by an attorney in preparation for impending litigation." *United States v. Ary*, 518 F.3d 775, 783 (10th Cir. 2008) (quotations and citations omitted).

The court concludes that the documents set forth on GMW Investors' privilege logs are not protected by either the attorney-client or work-product privileges, except, perhaps, for one email on the Willard Privilege Log dated April 17, 2014, from D. Willard to Randy Friedberg, who is listed as an attorney. For the rest of the documents, GMW Investors have not demonstrated that the documents are privileged. The privilege logs establish that the documents are responsive to the subpoena and reflect communications between and among GMW Investors about GMW's lawsuit. Except as stated above, no attorney appears on these communications. GMW Investors have not demonstrated that the documents contain "the mental processes of the

attorney," or otherwise reflect "material assembled by an attorney [or his agent] in preparation for impending litigation."  It does not appear that the GMW Investors are GeoMetWatch officers acting at the instruction of counsel but, rather, the logs suggest that GMW Investors are merely discussing their own opinions regarding this case.  Several privilege logs entries indicate that GMW Investors discussed "the lawsuit and legal theories in support of the same" among themselves, without the involvement of counsel.  As such, these documents are not privileged.

While this court aggressively protects from discovery documents that are in fact attorney-client or work-product privileged, it also strictly construes those privileges.  Because GMW Investors have not demonstrated that either the attorney-client or work-product privileges apply to the documents at issue, it is unnecessary for this court to determine whether there is a common interest between GeoMetWatch and GMW Investors.

Based on the foregoing, this court has determined that GMW Investors must provide full responses to the subpoena.  In addition, if there are post-lawsuit documents responsive to the subpoena that GMW Investors contend are privileged, they shall provide a privilege log for those documents.

**IT IS SO ORDERED**.

DATED this 12th day of July, 2016.

BY THE COURT:

_____

PAUL M. WARNER
United States Magistrate Judge
