IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GEOMETWATCH CORP., <br><br> *Plaintiff*, <br> v. <br><br> ALAN E. HALL, *et al.*, <br><br> *Defendants*. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT BASED UPON GOVERNMENTAL IMMUNITY** <br><br> Case No. 1:14-cv-00060-JNP-PMW <br><br> District Judge Jill N. Parrish |

Before the court are two motions for summary judgment based upon the Utah Governmental Immunity Act (UGIA). [Docket 398, 404.] Utah State University Research Foundation (USURF) and Advanced Weather System Foundation (AWSF) argue that they are entitled to summary judgment on certain non-contractual claims because they are immune from suit under the UGIA. Defendants Robert Behunin, Curtis Roberts, and Scott Jensen also assert that they are entitled to governmental immunity because they were employees of governmental entities.

The court GRANTS IN PART AND DENIES IN PART the motions for summary judgment. The court agrees that USURF and AWSF are governmental entities and grants the motions for summary judgment as to these parties. The court also grants summary judgment in favor of Roberts because he was acting within the scope of his employment with a governmental entity. The court denies summary judgment in favor of Behunin and Jensen because there is a dispute of material fact as to whether these defendants were acting within the scope of their government employment.

## BACKGROUND

USURF is a nonprofit corporation created and wholly owned by Utah State University. It is controlled by Utah State University and the State Board of Reagents. USURF's mission is to bridge the gap between discovery research and beneficial applications of this knowledge. It specializes in developing space-based sensors and satellite systems. USURF furthers Utah State University's education objectives by giving students hands-on experience directly related to their fields of study. About twenty percent of USURF's employees are students. USURF also sponsors senior projects for engineering and science students, collaborates with faculty on research projects, funds scholarships, and provides a lecture series that allows faculty and students to hear the latest in space science engineering and technologies. Finally, USURF employees teach at Utah State University as adjunct lecturers.

In the early 2000s, USURF developed a new weather system sensor for NASA and the National Oceanic and Atmospheric Administration. Around late 2009 or early 2010, GeoMetWatch Corporation (GeoMet) initiated discussions with USURF about developing a commercial weather sensor. Utah State University later decided to move the proposed commercial weather sensor project to a new corporate entity. In 2013, Utah State University created AWSF, a nonprofit corporation wholly owned by the university and controlled by the university and the State Board of Reagents. The parties anticipated that AWSF would assume the responsibility for designing and building the proposed weather sensor.

GeoMet's weather sensor venture subsequently failed. It sued USURF and two of its employees—Behunin and Roberts—and AWSF and one of its employees—Jensen. GeoMet asserted a number of causes of action against these defendants, including claims for misappropriation of trade secrets, intentional interference with economic relations, unjust

enrichment, violations of the Utah Truth in Advertising and Utah Unfair Practices Act, fraudulent inducement, breach of fiduciary duty, fraudulent non-disclosure, and civil conspiracy.

USURF, AWSF, and the employees moved for summary judgment on these causes of action. They argue that since they are Utah government entities or employees of Utah government entities, the UGIA required GeoMet to file a timely notice of claim and an undertaking. *See* UTAH CODE §§ 63G-7-401, -402, -601. Because GeoMet did neither, the defendants assert that they are entitled to summary judgment on the state-law, non-contract claims against them. GeoMet does not dispute that it neglected to file a notice of claim or an undertaking. Instead, it argues that the requirements of the UGIA do not apply to this case because USURF and AWSF are not Utah government entities and the individual defendants' tortious conduct did not occur within the scope of their employment with a Utah government entity.

Upon reviewing the parties' briefs, the court *sua sponte* ordered supplemental briefing on this issue of whether Utah Code section 63G-7-501, which provides that "[t]he district courts have exclusive, original jurisdiction over any action brought under" the UGIA, requires claims against state entities to be brought in state court. This court subsequently certified three questions to the Utah Supreme Court: (1) whether USURF and AWSF are entitled to immunity under the UGIA; (2) whether Utah Code section 63G-7-501 vests exclusive, original jurisdiction over any action brought under the UGIA in state courts; and (3) whether the Attorney General for the State of Utah or any other litigant has the authority to waive the jurisdictional provision contained in Utah Code section 63G-7-501. The Utah Supreme Court issued an opinion providing some guidance, although it did not definitively answer these questions. *See GeoMetWatch Corp. v. Utah State Univ. Research Found.*, 428 P.3d 1064 (Utah 2018).

**ANALYSIS**

The motions for summary judgment filed by USURF and ASWF turn on two threshold issues: (1) whether these nonprofit corporations are governmental entities entitled to immunity under the UGIA and, if so, (2) whether Utah Code section 63G-7-501 permits governmental entities to be sued in federal court on state-law claims. The court addresses each of these issues in turn. The court then addresses whether the individual employee defendants are entitled to summary judgment on any of the claims against them.

**I.  "GOVERNMENTAL ENTITY" UNDER THE UGIA**

The UGIA "governs all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority." UTAH CODE § 63G-7-101(2)(b). "'Governmental entity' means the state and its political subdivisions . . . ." *Id.* § 63G-7-102(4). The two components of "governmental entity"—"state" and "political subdivision"— are further defined by the UGIA. The term "state" means "the state of Utah, and includes each office, department, division, agency, authority, commission, board, institution, hospital, college, university, Children's Justice Center, or *other instrumentality of the state*." *Id.* § 63G-7-102(10) (emphasis added). "Political subdivision," is defined as "any county, city, town, school district, community reinvestment agency, special improvement or taxing district, local district, special service district, an entity created by an interlocal agreement adopted under Title 11, Chapter 13, Interlocal Cooperation Act, or *other governmental subdivision or public corporation.*" *Id.* § 63G-7-102(8) (emphasis added).

The parties dispute whether USURF and ASWF, nonprofit corporations owned by Utah State University, are governmental entities covered by the UGIA. USURF and ASWF do not fit neatly into any of the categories listed under the definitions of "state" or "political subdivision" found in the UGIA. But the defendants argue that USURF and ASWF qualify as both the "state"

4

and a "political subdivision" under the catch-all provisions found within the definition of each of these terms. In other words, they assert that they are entitled to immunity both as an "other instrumentality of the state" and as an "other governmental subdivision or public corporation." The court first examines the "other instrumentality of the state" catch-all provision.

The first step in determining whether USURF and ASWF qualify as an "instrumentality of the state" is to look at the dictionary definition of "instrumentality." *GeoMetWatch Corp. v. Utah State Univ. Research Found.*, 428 P.3d 1064, 1072 (Utah 2018). The Utah Supreme Court has noted that this term has a both a general definition and a specific definition that relates to government operations. *Id.* That court further held that the Utah Legislature "intended a meaning focused on government operations." *Id.* Therefore, relevant definitions of "instrumentality" include: "A means or agency through which a function of another entity is accomplished, such as a branch of a governing body" *Id.* (quoting *Instrumentality*, BLACK'S LAW DICTIONARY (10th ed. 2014).

Because "other instrumentality of the state" is a catch-all term that appears at the end of an exemplary list, the court must next apply the *ejusdem generis* canon of construction to the relevant definitions of "instrumentality." *Id.* at 1073. In other words, the court must determine whether the listed examples inform or modify the dictionary definition of "instrumentality." *Id.*

Taking these two interpretive steps together, "the ultimate inquiry is whether [USURF or ASWF] is a branch of the state that carries out state functions, and, if so, whether that branch and its functions are 'of the same general kind, class, character, or nature'" as the twelve enumerated terms listed under the definition of "state" in the UGIA. *Id.* at 1074.

A. *"Instrumentality of the State"*

Under the first step of this inquiry, the court must determine whether USURF and ASWF fit within the definition of "instrumentality of the state." In other words, are these public

5

corporations "branch[es] of the state that carr[y] out state functions"? *See GeoMetWatch*, 428 P.3d at 1074. In answering this question, the court notes that Utah State University is "the state" under the UGIA. This statute explicitly includes state-operated universities within the definition of this term. UTAH CODE § 63G-7-102(10). Thus, the question is whether USURF and ASWF are (1) instrumentalities or branches of Utah State University that (2) perform university functions. The answer is yes.

          1)        Branches of Utah State University

USURF and ASWF are instrumentalities or branches of Utah State University. The Utah Supreme court held that relevant definitions of "instrumentality" include (1) "A means or agency through which a function of another entity is accomplished, such as a branch of a governing body"; (2) "A subsidiary branch, as of a government, by means of which functions or policies are carried out"; and (3) "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out [:] a part, organ, or subsidiary branch esp. of a governing body." *Id.* at 1072 (alteration in original) (quoting *Instrumentality*, BLACK'S LAW DICTIONARY (10th ed. 2014); *Instrumentality*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2016); *Instrumentality*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, (14th ed. 2016)). Apparently because the term "branch" is used in all of these definitions of "instrumentality," the Utah Supreme Court used "branch" as shorthand for "instrumentality" when it articulated the question before this court: "whether the entity is a branch of the state." *Id.* at 1074. "Branch" is defined as "[a]n offshoot, lateral extension, or division of an institution." *Branch*, BLACK'S LAW DICTIONARY (10th ed. 2014). Taking these definitions of "instrumentality" and "branch" together, the ultimate inquiry boils down to whether USURF and ASWF are (1) subsidiary branches or offshoots of Utah State University (2) through which functions of the university are carried out.

USURF and ASWF satisfy the first component of the definition of "instrumentality" because they are subsidiary branches of Utah State University. The Utah Legislature authorized Utah State University to create nonprofit corporations like USURF and ASWF:

> (1) In addition to any other powers which it now has, Utah State University may form nonprofit corporations or foundations controlled by the president of the university and the State Board of Regents to aid and assist the university in attaining its charitable, scientific, literary, research, and educational objectives.
> (2) The nonprofit corporations or foundations may receive and administer legislative appropriations, government grants, contracts, and private gifts to carry out their public purposes.

UTAH CODE § 53B-18-501. In accord with this statutory grant of authority, Utah State University created USURF and ASWF. These public corporations are wholly owned by the university and controlled by the university and the Board of Regents, another state entity. Given Utah State University's ownership and control of USURF and ASWF, these corporations are clearly branches or agents of the university.

USURF also satisfies the second component of the definition of "instrumentality" because it performs functions of Utah State University. The university's functions include educating its students in engineering and science and conducting research in these fields of study. USURF's articles of incorporation state that it was formed for the purpose of furthering Utah State University's educational and research goals by:

> 1. Conduct[ing] research in areas deemed appropriate by the governing Board of Trustees of [USURF] and consistent with the charitable, scientific, literary, research, educational, and service goals of Utah State University.
> 2. Acquire[ing] and disseminat[ing] knowledge, [and] support[ing] the education, research, and public service functions of Utah State University.
> . . . .
> 7. Us[ing] or apply[ing] the whole, or any part of, resources generated by [USURF] exclusively for charitable, scientific, literary, research, educational, or service purposes to benefit [USURF] and Utah State University.

7

USURF has advanced the education and research objectives stated in its articles of incorporation by giving students hands-on experience directly related to their fields of study in engineering and science. About twenty percent of USURF's employees are students. USURF also sponsors senior projects for engineering and science students, collaborates with faculty on research projects, funds scholarships, and provides a lecture series that allows faculty and students to hear the latest in space science engineering and technologies. Finally, USURF employees teach at Utah State University as adjunct lecturers. USURF, therefore, performs the educational and research functions of Utah State University.

ASWF's articles of incorporation similarly indicate that it was created to" benefit, perform the functions of, and carry out the purposes of Utah State University." Specifically, it was organized "to perform scientific research relating to advanced weather systems" and "to provide educational opportunities for undergraduates and graduate students relating to engineering, software design and development, product design and development, and business development through internships, externships, and other research opportunities in all fields relating to advanced weather systems."

But ASWF differs from USURF because it has not provided evidence of an established track record of performing Utah State University's educational functions. USURF was founded in 1967 and has been in operation for decades. ASWF, on the other hand, was created in 2013 specifically to design and build a weather sensor for GeoMet. GeoMet agreed to provide a number of scheduled payments to ASWF totaling $124,933,872 in order to fund the project. GeoMet, however, failed to remit it first scheduled payment, and ASWF terminated its contract with GeoMet. Given that it was never fully funded, ASWF has not produced evidence of concrete steps taken to further Utah State University's educational and research objectives.

ASWF's lack of funding, however, does not alter its essential nature and purpose. Like USURF, ASWF was created to solve real-world engineering problems while giving students hands-on experience. ASWF is also an instrumentality of Utah State University because it was designed to perform functions of the university.

2) State Functions

In order to satisfy the test articulated by the Utah Supreme Court, USURF and ASWF must also perform state functions. As noted above, Utah State University qualifies as "the state" under the UGIA. Thus, an analysis of whether USURF and ASWF performed state functions is identical to the analysis of whether these public corporations performed the educational and research functions of Utah State University. Because, as noted above, USURF and ASWF performed the functions of Utah State University, they also performed state functions.

Therefore, USURF and ASWF fit within the plain meaning of "instrumentality of the state." They are branches of the state that perform state functions.

B.   *Ejusdem Generis*

Under the second step of the test announced by the Utah Supreme Court, this court must next determine whether the *ejusdem generis* canon of construction narrows the definition of "instrumentality of the state" to exclude USURF and ASWF from the scope of this term. "*Ejusdem generis* presumes 'that in order to give meaning to a general term, the general term is understood as restricted to include things of the same kind, class, character, or nature as those specifically enumerated, unless there is something to show a contrary intent.'" *GeoMetWatch*, 428 P.3d at 1073 (citation omitted). "In its simplest terms, *ejusdem generis* 'posits that general catchall terms appearing at the beginning or end of an exemplary statutory list are understood to be informed by the content of the terms of the list.'" *Id.* (citation omitted). When the items in an exemplary list indicate that a generic term has a more specific meaning, courts have applied the *ejusdem generis*

9

canon of construction to narrow the definition of the generic term. *See State v. Bagnes*, 322 P.3d 719, 724–25 (Utah 2014); *Isaacson v. Dorius*, 669 P.2d 849, 851 (Utah 1983).

"It is sometimes possible for [courts] to apply *ejusdem generis* to a statute and delineate the specific commonalities between the terms." *GeoMetWatch*, 428 P.3d at 1073. But the Utah Supreme Court concluded that the commonalities between the twelve examples listed under the statutory definition of "state" "are not so readily apparent that we believe this is a time where *ejusdem generis* allows us to delineate the specific commonalities at a general level." *Id.* at 1074. This court agrees that the breadth and variety of terms found in the twelve listed items make it difficult to readily discern a single unifying theme. Many of the listed terms, including "office, department, division, agency, authority, commission, [and] board," refer to divisions of the state that exclusively perform governmental functions. *See* UTAH CODE § 63G-7-102(10). The Utah Office of Tourism, Utah Department of Transportation, and Utah Labor Commission, for example, all fit within this group of terms. Other listed terms, like "hospital, college, [and] university," describe government institutions that coexist with private institutions that provide similar services. *See id*. State colleges and universities, for example, are funded in part through taxpayer money, but just like their private counterparts, they also charge tuition and select the students who may attend.

In this case, it is not necessary to determine whether a single commonality or set of shared traits can describe all of the twelve terms. The inclusion of "university" within the list indicates that the catch-all phrase "other instrumentality of the state" is at least broad enough to include entities that are similar to state institutions of higher education. State universities are owned and controlled by the state and are created for the purpose of furthering education and research within Utah. USURF and ASWF, which were created by Utah State University to further its goals, fit

within this mold. As noted above, USURF and ASWF were created by the state and are controlled by the state. These public corporations are branches of Utah State University and further its mission of conducting research and providing educational opportunities for its students. Thus, because USURF and ASWF are "of the same kind, class, character, or nature" as a state university, the *ejusdem generis* cannon of construction does not narrow the definition of "instrumentality of the state" to exclude these public corporations. *See GeoMetWatch*, 428 P.3d at 1073 (citation omitted).

C. *Conclusion*

USURF and ASWF fit within the definition of "instrumentality of the state" and are entitled to governmental immunity under the UGIA. The court, therefore, need not decide whether these defendants qualify as "governmental subdivision[s] or public corporation[s]." Because the parties do not dispute that GeoMet failed to satisfy the requirements for suing a governmental entity under the UGIA, the court grants summary judgment in favor of USURF and ASWF as to the following claims: misappropriation of trade secrets, intentional interference with economic relations, unjust enrichment, violations of the Utah Truth in Advertising Act, violations of the Utah Unfair Practices Act, fraudulent inducement, breach of fiduciary duty, fraudulent non-disclosure, and civil conspiracy.

## II. UTAH CODE SECTION 63G-7-501

The court also certified to the Utah Supreme Court the question of whether Utah Code section 63G-7-501 permits Utah governmental entities to be sued in federal court on state-law claims. But the court concludes that it is unnecessary to reach this issue.

First, section 63G-7-501 does not control this court's subject matter jurisdiction. The jurisdiction of federal courts is governed by the Constitution and Congress. State statutes cannot affect a federal court's subject matter jurisdiction. *Chicago & N.W.R. Co. v. Whitton*, 80 U.S. (13 Wall.) 270, 286 (1871); *Stewart v. Ferer*, 163 F.2d 183, 185 (10th Cir. 1947). At most, a state

statute can bar a federal court from granting relief to the plaintiff. *Webb v. Tom Brown, Inc.*, 807 F.2d 783, 784–85 (9th Cir. 1987). Therefore, it is unnecessary to analyze section 63G-7-501 as a threshold jurisdictional issue.

Second, section 63G-7-501 cannot affect the rights of the parties in this case. The court has concluded that USURF and ASWF are governmental entities that are entitled to governmental immunity. Because the court grants summary judgment in favor of these defendants as to the claims covered by the UGIA, the section 63G-7-501 issue is moot.

Finally, the court is reticent to address this state-law issue given that the Utah Supreme Court has declined to resolve the question at this time. Because it is unnecessary to do so, the court likewise abstains from addressing the section 63G-7-501 issue.

## III. THE EMPLOYEE DEFENDANTS

The UGIA also governs claims against employees of governmental entities if the claims arise out of the performance of the employee's job duties. UTAH CODE § 63G-7-101(2)(b). Because the court has determined that USURF and ASWF are governmental entities, the only issue that remains is whether there is a dispute of fact as to whether the claims against Roberts, Jensen, and Behunin arise exclusively from the performance of their duties as employees of a governmental entity.

### A. Roberts

Roberts argued that he is also entitled to summary judgment as an employee of Utah State University. In response, GeoMet argued that there is a dispute as to whether Roberts is an employee of Utah State University or USURF. Because the court has determined that USURF is a governmental entity, this dispute is not material. The parties do not contest that the claims against Roberts arise from actions taken within the scope of his employment with a governmental entity. Thus, the court grants summary judgment in favor of Roberts on all of the claims asserted against

him: misappropriation of trade secrets, intentional interference with economic relations, fraudulent nondisclosure, and civil conspiracy.

### B. *Jensen and Behunin*

Jensen and Behunin also moved for summary judgment. They argued that they are entitled to immunity because they were employed by governmental entities—AWSF and Utah State University. In its response brief, GeoMet noted that Jensen also began working for Tempus, a private company that allegedly misappropriated GeoMet's trade secrets. Additionally, GeoMet cited record evidence that Behunin served on GeoMet's board of directors. GeoMet argued that because Jensen and Behunin assumed duties outside of their government employment, there is a dispute of fact as to whether the claims asserted against them arose from actions performed within the scope of their government employment. In their reply briefs, Jensen and Behunin both asserted that they are entitled to summary judgment because GeoMet failed to cite evidence that the claims against them are based on actions taken outside the scope of their government jobs.[1]

In the end, neither the plaintiff nor the defendants cite record evidence regrading the scope of Jensen and Behunin's government employment or evidence that indicates whether actions taken outside the scope of their employment gave rise to GeoMet's claims. Thus, the resolution of Jensen and Behunin's motion for summary judgment turns on which side bears the initial burden of production on this issue.

---

[1] Behunin also argued that his actions as a board member of GeoMet fall within the scope of his government employment because he represented Utah State University on the board. But Behunin provides no authority or argument for the proposition that he was within the scope of his government employment while serving on the board or that Utah State University's governmental immunity extends to situations where it participates in the governance of private, for-profit corporations. Absent any authority or argument on these issues, the court rejects Behunin's argument at this time.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, the movants have not met their initial burden of showing that there is no dispute of fact regarding the scope of Jensen and Behunin's employment. They did not cite evidence regarding their government job duties or demonstrate that all of the actions that could give rise to GeoMet's claims fall within the scope of their government employment. Nor did they raise the scope of employment issue in their motions for summary judgment. Jensen and Behunin waited until filing their reply briefs to address this issue. And even when they acknowledged the issue, they failed to make any showing regarding the absence of any dispute regarding the scope of their employment. Instead, Jensen and Behunin accused GeoMet of failing to provide evidence disproving their governmental immunity claims. But because they never shouldered their initial burden of showing that they are entitled to summary judgment on the scope of employment issue, the burden never shifted to GeoMet. Therefore, Jensen and Behunin cannot prevail on their motions for summary judgment based upon governmental immunity.

## CONCLUSION AND ORDER

For the reasons stated above, the court GRANTS IN PART AND DENIES IN PART the motions for summary judgment filed by USURF, AWSF, Roberts, Jensen, and Behunin, [Docket 398, 404], and orders as follows:

1. The court grants summary judgment in favor of USURF and AWSF as to the state-law, non-contract claims asserted against them, namely: the second cause of action

(misappropriation of trade secrets), the fourth cause of action (intentional interference with economic relations), the sixth cause of action (unjust enrichment), the seventh cause of action (violations of the Utah Truth in Advertising Act), the eighth cause of action (violations of the Utah Unfair Practices Act), the ninth cause of action (fraudulent inducement), the tenth cause of action (breach of fiduciary duty), the eleventh cause of action (fraudulent non-disclosure), and the twelfth cause of action (civil conspiracy).

2. The court grants summary judgment in favor of Curtis Roberts as to all claims asserted against him.

3. The court denies summary judgment in favor of Scott Jensen and Robert Behunin.

Signed February 4, 2019

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge