IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GEOMETWATCH CORP., a Nevada corporation,<br><br>                *Plaintiff*,<br>v.<br><br>ALAN E. HALL, *et al.*,<br><br>                *Defendants*. | **MEMORANDUM DECISION AND ORDER GRANTING SUMMARY JUDGMENT TO DAVID CRAIN**<br><br>Case No. 1:14-cv-60<br><br>District Judge Jill N. Parrish |

Before the court is a Motion in Limine and Motion for Summary Judgment filed by third-party defendant Dr. David Crain on July 27, 2018. (ECF No 596). Third-party plaintiff Utah State University Research Foundation ("USURF") filed an opposition on October 11, 2018, (ECF No. 725), to which Dr. Crain replied on November 30, 2018, (ECF No. 812).

After reviewing the papers submitted in connection with this motion, the court identified grounds for partial summary judgment in favor of Dr. Crain that were not raised by his motion. Pursuant to Rule 56(f)(2) of the Federal Rules of Civil Procedure, the court issued a notice to apprise the parties of the basis of the proposed partial summary judgment, and to provide them an opportunity to be heard prior to the entry thereof. (ECF No. 830). Dr. Crain accepted the court's invitation, submitting a memorandum in support of the court's proposed partial summary judgment. (ECF No. 831). USURF declined to file a response to the court's notice.

## I.     BACKGROUND

This third-party action emanates from a multi-defendant lawsuit involving a nascent satellite-hosted weather sensor venture. In that suit, plaintiff GeoMetWatch Corporation

("GeoMet") asserts that USURF—GeoMet's erstwhile partner in the venture—colluded with others to deprive GeoMet of the business opportunity it had developed.[1] Dr. Crain, the founder of GeoMet, acted as its president while concurrently working for USURF for a period of 15 months in 2010-2011. USURF's third-party complaint against Dr. Crain asserts two claims related to that period of employment.

A. STATEMENT OF FACTS

In 2008, Dr. Crain formed GeoMet for the purpose of pursuing his idea to sell weather data derived from a series of hyperspectral sounders launched into geostationary orbit. USURF had previously developed such a system for NASA. In 2009, Dr. Crain approached USURF about working directly for them as part of an effort to commercialize USURF's technology. In these discussions, Dr. Crain indicated that he would like to "maintain an active role in [his] commercial sounder pursuit" (*i.e.*, GeoMet), and that "ideally, [he] would like to include [USURF] as a partner" in that project. (ECF No. 596-6 at 4).

Dr. Crain accepted an offer of employment in January of 2010, and began work at USURF in February of 2010. On February 1, 2010, Dr. Crain executed USURF's Acceptance of Proprietary Information and Intellectual Property Policy and Procedure, by which he agreed to be bound by the terms of USURF's proprietary information and intellectual property policy outlined in Policy USURF-AD-001 (the "IP Agreement").

When GeoMet and USURF began their joint venture in March of 2010—with USURF acting as the developer and manufacturer of the sensor—Dr. Crain and USURF developed and executed a Conflict of Interest declaration (the "COI Agreement"). The COI Agreement

---

[1] For a complete account of the actors, events, and timeline giving rise to the original lawsuit, see the November 27, 2018 Amended Memorandum Decision and Order Granting in Part and Denying in Part Motion for Summary Judgment at ECF No. 811.

acknowledged the conflict of interest arising from Dr. Crain's dual roles, and erected certain safeguards "as a protection to Dr. Crain, [GeoMet], [and] USURF[.]" (ECF No. 596-8 at 2). In relevant part, the COI agreement reads:

> 2. It is understood that Dr. Crain will pursue business opportunities for both [USURF] and [GeoMet]. When he is representing himself as an employee of [GeoMet, GeoMet] will pay his time and travel expenses. When he is pursuing opportunities or performing work on behalf of [USURF], he will represent himself as an employee of [USURF], and [USURF] will pay his expenses. When he travels with mixed objectives, we will have a prior understanding allowing for an equitable allocation of his expenses. Travel plans will be approved in advance by the [USURF] Director of Business Development, Jim Marshall.

(ECF No. 596-8 at 2).

In May of 2011, Dr. Crain ended his employment with USURF in order to work in a full-time capacity for GeoMet. As part of this voluntary termination, Dr. Crain and USURF entered into an employment release (the "2011 Release").

In or around April of 2013, GeoMet and USURF voluntarily terminated their operating agreements in order to facilitate the substitution of Advanced Weather Systems Foundation ("AWSF") as the sensor manufacturer. In addition, on April 19, 2013, GeoMet and USURF entered into a general mutual release agreement (the "2013 Release"), which reads, in relevant part:

> **Release of [GeoMet] by USURF.** USURF does hereby remise, release, waive, and discharge [GeoMet], its officers, agents, and employees from any and all liabilities, obligations, claims, demands whatsoever that have or may have arisen between the Parties prior to the Effective Date of this Agreement.

(ECF No. 591-4 at 3).

## II. ANALYSIS

USURF's third-party complaint asserts a breach of contract claim and a breach of fiduciary duty claim against Dr. Crain. Two general theories of liability run through both claims. First, that Dr. Crain breached contractual and fiduciary obligations by allocating his time—in the

3

form of effort reports used to bill employee time to the appropriate project—and travel expenses to USURF while performing work and pursuing opportunities on behalf of GeoMet. USURF's second theory of liability—generally involving intellectual property—is convoluted and has evolved over the course of this litigation. In opposing Dr. Crain's partial motion for summary judgment, USURF has apparently settled on the following: "Crain has breached his agreements and duties to USURF by claiming that USURF's intellectual property are [GeoMet's] trade secrets." (ECF No. 725 at 12).

Dr. Crain seeks summary judgment on two grounds. First, he argues that each of the two releases provides him an absolute defense to liability from USURF's claims. In the alternative, Dr. Crain argues that USURF's failure to adequately disclose the damages calculations underlying its claims requires exclusion of such evidence at trial, and that without the excluded evidence, USURF's claims cannot survive summary judgment.[2]

As explained below, Dr. Crain is entitled to summary judgment on USURF's expense allocation theory because USURF released that claim against Dr. Crain by the terms of the 2013 Release. Further, pursuant to the court's notice of proposed partial summary judgment, Dr. Crain is entitled to summary judgment on the intellectual property theory because USURF has not adduced any conduct attributable to Dr. Crain that would establish his breach of contractual or fiduciary obligations.[3]

---

[2] Dr. Crain also argues that USURF has erroneously applied a 10% interest rate to its alleged damages under a misapprehension of Utah Code § 15-1-1. USURF concedes that it may not invoke that statute to apply prejudgment interest to its alleged damages. The parties continue to dispute whether USURF may collect post-judgment interest under Utah Code § 15-1-4, but the court need not resolve this issue because this order precludes USURF's recovery of money damages against Dr. Crain in the first instance.

[3] Together, these grounds entitle Dr. Crain to complete summary judgment on USURF's third-party complaint. Thus, the court need not consider the effect of the 2011 Release, and it need not address Dr. Crain's motion in limine premised on alleged disclosure defects.

## B. THE EXPENSE ALLOCATION THEORY

USURF alleges that Dr. Crain breached the COI Agreement and his fiduciary duty of loyalty to USURF by allocating his time and travel expenses to USURF while performing work for GeoMet.

Dr. Crain argues that, as an uncontroverted "officer" of GeoMet, the 2013 Release unambiguously released him "from any and all liabilities, obligations, claims, and demands whatsoever that have or may have arisen" before April 19, 2013—which timeframe would encompass the expense allocation liability. In response, USURF seeks to narrow the effect of the release, arguing that it did not release claims flowing from Dr. Crain's conduct as an employee of USURF. Specifically, USURF argues that the 2013 Release "would only apply insofar as Crain was acting as an officer and agent of [GeoMet] and not as a USURF employee."

The court cannot find support in the 2013 Release for USURF's interpretation. The 2013 Release is broad, and it contains no language limiting its effect on the basis of the capacity in which the conduct giving rise to a particular claim occurs. Moreover, it was executed well after Dr. Crain's unusual dual-role arrangement had concluded; by the time the release was consummated in April of 2013, there would have been no doubt that Dr. Crain was a GeoMet officer, thereby bringing him squarely within the terms of the release agreement. Far from a mere employee swept into the scope of the release inadvertently, Dr. Crain was GeoMet's president—a role the parties would have understood to be a GeoMet officer.

But even if the contract could be read to imply a limitation on the basis of the precise role from which the claim arose, the behavior alleged to have breached the COI Agreement was the performance of work for GeoMet. And to the degree that Dr. Crain was performing work on behalf of GeoMet while allocating his costs to USURF, that benefit inured to GeoMet. Thus, if there is any claim for reimbursement, it lies against GeoMet, not Dr. Crain personally. Indeed,

5

the COI Agreement declares as much: "When [Dr. Crain] is representing himself as an employee of [GeoMet, GeoMet] will pay his time and travel expenses." And it is uncontroverted that GeoMet enjoys the benefit of the broad 2013 Release of "all liabilities, obligations, claims, and demands whatsoever that have or may have arisen between [GeoMet and USURF.]"

Dr. Crain is entitled to summary judgment on the expense allocation theory because liability thereunder—whether borne from contractual or fiduciary obligations—was released by the 2013 Release.

### C. THE INTELLECTUAL PROPERTY THEORY

The 2013 Release bars only those claims that "have or may have arisen between the parties prior to" April 19, 2013. Thus, to the degree that USURF's third-party complaint alleges claims against Dr. Crain that would not have arisen before that date, they are not barred by the release. Because the conduct giving rise to USURF's intellectual property theory did not occur until 2017, it is unaffected by the 2013 Release.

USURF articulates its intellectual property theory as follows: "Crain has breached his agreements and duties to USURF by claiming that USURF's intellectual property are [GeoMet's] trade secrets." (ECF No. 725 at 12). In support, USURF relies on a document created and filed by GeoMet as part of a misappropriation of trade secrets claim against USURF.

But Dr. Crain is not party to the primary action in which GeoMet asserts that claim. And this theory of liability cannot be sustained because *GeoMet*'s litigation conduct cannot, as a matter of law, be imputed to Dr. Crain. Stated differently, actions by GeoMet—a distinct corporate entity—in litigation between USURF and GeoMet, cannot amount to Dr. Crain's breach of his contractual or fiduciary duties to USURF. For this reason, USURF's intellectual property theory of liability against Dr. Crain cannot be maintained.

Even if Dr. Crain had individually asserted an ownership interest in USURF's intellectual property, USURF has not shown how a claim of ownership in litigation, without more, amounts to a breach of either the IP Agreement or Dr. Crain's fiduciary duties.

The IP Agreement contains no language that proscribes the *conduct* of claiming ownership of intellectual property. Rather, that agreement merely sets forth a framework for determining who—as between USURF and an employee-inventor—retains legal title to intellectual property developed under various circumstances. While the agreement may well be dispositive in hypothetical litigation seeking to clarify the ownership of intellectual property developed by a USURF employee, Dr. Crain would not breach that agreement by claiming ownership through, for example, initiating a lawsuit. More generally, absent a covenant not to sue or an enforceable no-contest clause, parties do not breach an agreement by asserting legal challenges that concern that agreement.

And a post-employment claim of ownership of intellectual property does not run afoul of any fiduciary duties that Dr. Crain may have owed to USURF. In Utah, it is apparently an open question whether non-attorney employees owe a fiduciary duty of loyalty to their employer. *See Prince, Yeates & Geldzahler v. Young*, 94 P.3d 179, 185, 185 n.2 (Utah 2004) (implying a limited fiduciary duty of loyalty on the part of employee-attorneys not to compete with their employer-firm, but reserving the question of "whether all 'mere employees' owe fiduciary duties to their employers to not compete with the employer's legitimate business interests").

But even assuming that the Utah Supreme Court would extend this principle to all "mere employees," the scope of the *Prince* duty is narrow: An employee need only refrain—during the period of employment—from competing with their employer "without the employer's prior

7

knowledge and agreement." *Id.* Obviously, a post-employment claim of right to intellectual property in litigation does not breach that duty.

Dr. Crain is therefore entitled to summary judgment on USURF's intellectual property theory of liability.

### III.     ORDER

For the reasons articulated, Dr. Crain is entitled to complete summary judgment on USURF's third-party complaint. Specifically,

1. Dr. Crain's Motion in Limine and Motion for Summary Judgment, (ECF No. 596), is **GRANTED IN PART and DENIED IN PART.**

    a. Dr. Crain is entitled to summary judgment on USURF's breach of contract claim and its breach of fiduciary duty claim.

    b. Dr. Crain's Motion in Limine is **DENIED AS MOOT.**

2. The Motion in Limine brought by Dr. Crain and GeoMet, (ECF No. 622), is **DENIED AS MOOT.** That motion sought to exclude expert testimony insofar as it related to claims that have now been resolved on summary judgment by this order and the Memorandum Decision and Order Granting Summary Judgment to GeoMet on USURF's Counterclaim. (ECF No. 829).

Signed March 11, 2019

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge